UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLAN DIETZEL,

       Plaintiff,                       CIVIL ACTION NO. 11-13377

       v.                              DISTRICT JUDGE MARK A. GOLDSMITH

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

###     A.    *Proceedings in this Court*

On August 3, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny his claim for social security benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the case was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). Cross-motions for summary judgment are pending (Dkt. Nos. 15, 16). Plaintiff also filed a reply brief (Dkt. No. 17).

###     B.    *Administrative Proceedings*

Plaintiff applied for benefits on October 15, 2009, alleging that he became unable to work on July 7, 2008; Plaintiff later amended his alleged disability onset date to October 8, 2009 (Tr.

12, 153-166). Plaintiff's application for benefits was initially denied by the Commissioner on March 10, 2010 (Tr. 12, 105-113). On March 3, 2011, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Jessica Inouye, who considered the case *de novo*. In a decision dated March 16, 2011, the ALJ found that Plaintiff was not disabled (Tr. 9-29). Plaintiff requested a review of this decision on May 16, 2011 (Tr. 7-8). On July 21, 2011, the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-17E, Tr. 278-280), the Appeals Council denied Plaintiff's request for further review (Tr. 1-6).

In light of the entire record in this case, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 41 years old on his alleged disability onset date (Tr. 18). Plaintiff has past relevant work as a carpenter, stock clerk, and screw machine operator (Tr. 18). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, the "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.

engaged in substantial gainful activity since October 8, 2009, Plaintiff's alleged disability onset date (Tr. 15). At step two, the ALJ found that Plaintiff had the following "severe" impairments: depression, alcohol abuse, degenerative changes of the lumbar and cervical spine, and personality disorder. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations (Tr. 15-16).

Between steps three and four, the ALJ found that Plaintiff – if he stopped abusing alcohol – had the Residual Functional Capacity ("RFC") to perform:

> [L]ight work...with the following exceptions: the work must be non-production oriented, which would involve simple, routine and repetitive tasks; the work must be unskilled and fall within the specific vocational preparation ("SVP") categories of either 1 or 2; the work must be low-stress, with no changes in work setting and no decision-making required; [Plaintiff] should only have minimal direct contact with the general public, occasional interaction with supervision, and should not work in close proximity to co-workers with no teamwork functioning required; he must avoid concentrated exposure to heights, moving machinery, and vibrations; he can occasionally balance, stoop, crouch, kneel, crawl or climb ramps or stairs, but he cannot climb ladders, ropes or scaffolds; and he would be unreliable and likely to be absent approximately 3 times per month. (Tr. 16-17, 20).

At step four, the ALJ found that Plaintiff could not perform his previous work as a carpenter, stock clerk or screw machine operator (Tr. 18). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as inspector/sorter (6,000 jobs in the regional economy), hand packager/bander (6,000 jobs in the regional economy), or assembler (14,000 jobs in the regional economy) (Tr. 24).

### B.   *Administrative Record & Plaintiff's Claims of Error*

Plaintiff raises two very limited challenges to the Commissioner's ruling. First, Plaintiff argues that the ALJ did not properly account for his "moderate" restrictions in concentration,

persistence and pace in the RFC.  Second, Plaintiff argues that the ALJ did not properly account for his "leg pain with dimished reflexes" in the RFC, and argues that the ALJ should have recognized Plaintiff's knee condition as a severe impairment at step two of the disability analysis (Dkt. 15 at 7).  As such, the Court focuses only on the evidence related to these limited arguments.

As to Plaintiff's first argument, the ALJ found that Plaintiff suffered from "marked" (Tr. 16) restrictions in concentration, persistence and pace (Tr. 16) if Plaintiff continued abusing alcohol, but that Plaintiff would only be "moderate[ly]" (Tr. 19) restricted in concentration, persistence and pace if Plaintiff stopped abusing alcohol.  The ALJ based this conclusion on an opinion from State Agency Psychologist Ron Marshall, Ph.D. (Tr. 400-417).  On February 21, 2010, Dr. Marshall completed a form indicating that Plaintiff suffered from "moderate" (Tr. 410, 414-415) restrictions in concentration, persistence and pace, social interactions and adaptive functioning.  In the narrative portion of this form, Dr. Marshall further indicated that "[c]oncentration, persistence, & pace – pays bills, able to follow simple instructions.... Retains ability to do simple, repetitive tasks which minimizes new learnigs/chnage (sic) which is less stressful. [W]ould work better with brief interactions with others" (Tr. 416)

As to Plaintiff's second argument – that the ALJ did not account for Plaintiff's knee condition in the RFC – Plaintiff does not direct the Court's attention to any medical evidence in the record.  Rather, Plaintiff cites his own testimony (Tr. 83-84) that he had "chronic pain in his right leg, lower back, and neck" (Dkt. 15 at 7) and cites the ALJ's findings (Tr. 21).

### III.   DISCUSSION

#### A.   *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing

the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

  **B.**  ***Governing Law***

  The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

C.  **Analysis and Conclusions**

As noted earlier, Plaintiff raises two arguments on appeal. Each is considered below:

1. **Concentration, Persistence and Pace**

Plaintiff's first argument is that the ALJ's hypothetical (and ultimate RFC) was inaccurate because it failed to explicitly state that Plaintiff was "moderately" limited in concentration, persistence and pace, social interaction and adaptive functioning (Dkt. 16 at 3-6). Specifically, Plaintiff claims that the ALJ's limitation of "non-production oriented...simple, routine, and repetitive...unskilled...low stress...and no decision making required" (Tr. 20) work did not adequately account for Plaintiff's moderate difficulties in maintaining concentration, performing activities within a schedule, maintaining regular attendance and ability to complete a normal workday without an unreasonable number and length of rest periods (Dkt. 16 at 5).

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v.*

*Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Plaintiff's argument – that hypothetical limitations such as "simple," and "unskilled" fail to account for moderate mental deficiencies – is not uncommon and the case law in this District resolves it both ways. Indeed, there is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work or simple, routine tasks.[2] However, there is also authority that has found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[3]

---

[2] *See e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations."); *Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job." (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09–14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation ... into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10–10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[3] *See e.g., Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7–8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations ... are not incompatible ."); *Latare v. Comm'r of Soc. Sec.*, No. 08–13022, 2009 WL 1044836, at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment."); *Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

In analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557, at * 10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems ... need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.").

However, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC. *See Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept.30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace."). In a similar case, this evaluative process was explained as follows:

> Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010).

In *Hess*, the state agency doctor found that the claimant suffered moderate limitations in concentration, persistence, and pace, such that the claimant had limitations in performing at a consistent pace. *See Hess*, 2008 WL 2478325, at *7. However, the doctor ultimately concluded that the claimant retained the ability to perform unskilled tasks on a sustained basis. *Id.* at *4. The court in *Hess* concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with concentration, persistence or pace, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical. *Id.* at *8.

In this case, the ALJ's limitation of simple, routine, and repetitive work activities in a stable work environment accurately reflects Dr. Marshall's opinion as to Plaintiff's moderate mental limitations, which is the opinion that the ALJ gave most weight (Tr. 18, 400-417). In addition to finding Plaintiff moderately limited with regard to concentration, persistence and pace, Dr. Marshall also found that Plaintiff was "able to follow simple instructions...." and that Plaintiff "[r]etain[ed] [the] ability to do simple, repetitive tasks which minimizes new

learnigs/chnage (sic) which is less stressful" (Tr. 416). This narrative description of Plaintiff's abilities is not significantly different from the RFC found by the ALJ, which limited Plaintiff to "non-production oriented...simple, routine, and repetitive...unskilled...low stress...and no decision making required" work (Tr. 20). As in *Hess* and *Lewicki*, this Court believes that the ALJ's finding of a moderate limitation in concentration, persistence, or pace has to be considered in conjunction with Dr. Marshall's broader conclusions, which suggest that Plaintiff could successfully perform unskilled occupational tasks. As such, this Magistrate Judge finds that the hypothetical question (and then the RFC) used by the ALJ is supported by substantial evidence in the record and should not be disturbed on appeal.

### 2. Plaintiff's Knee Condition

Plaintiff's second argument is that the ALJ did not properly account for his "leg pain with diminished reflexes" in the RFC, and that the ALJ should have recognized Plaintiff's knee condition as a severe impairment at step two of the disability analysis (Dkt. No. 16 at 7-8).

At the outset, Plaintiff fails to direct the Court's attention to any medical evidence in the record indicating that his leg/knee condition caused him greater restrictions than those ultimately found by the ALJ. Instead, Plaintiff cites his own testimony at the hearing that he had "chronic pain in his right leg, lower back, and neck" (Dkt. 15 at 7, citing Tr. 83-84) and cites, in circular fashion, to the ALJ's findings (Tr. 21). In fact, the ALJ's findings do indeed recognize that Plaintiff had "diminished reflexes in his right knee" (Tr. 21). Since Plaintiff fails to point the Court to any medical evidence indicating that the ALJ somehow erred in arriving at Plaintiff's RFC, Plaintiff's argument is simply not well-taken.

As to the final prong of Plaintiff's second argument – that the ALJ erred by not recognizing Plaintiff's "knee condition" as a severe impairment at step two – in *Maziarz v. Sec'y of Health and Human Serv's*, 837 F.2d 240, 244 (6th Cir. 1987), the ALJ determined that the plaintiff suffered from several severe cardiac impairments. The plaintiff argued the ALJ erred by not finding a cervical condition to be a severe impairment at step two of the sequential evaluation process. The *Maziarz* Court found it "unnecessary to decide" whether the ALJ erred in failing to find that the plaintiff's cervical condition constituted a severe impairment at step two, because the ALJ continued with the remaining steps of the sequential evaluation process and considered the plaintiff's cervical condition in determining whether he retained a sufficient RFC to allow him to perform substantial gainful activity. Therefore, the Sixth Circuit concluded that any alleged error at step two was harmless. Stated differently, the Sixth Circuit held that, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to specifically find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz*, 837 F.2d at 244; *see also, Swartz v. Barnhart*, 188 Fed. App'x. 361, 368 (6th Cir. 2006) (citing *Maziarz*).

In this case, the ALJ found at step two that Plaintiff suffered from the severe impairments of "depression, alcohol abuse, degenerative changes of the lumber and cervical spine, and personality disorder" (Tr. 15) and then proceeded to the next steps in the five-step analysis. In determining Plaintiff's RFC, the ALJ found that Plaintiff's severe impairments could reasonably be expected to limit Plaintiff's exertional capacity and range of motion (Tr. 20-23). The ALJ ultimately concluded that Plaintiff was limited to:

> [L]ight work...with the following exceptions: the work must be non-production oriented, which would involve simple, routine and repetitive tasks; the work must be unskilled and fall within the specific vocational preparation ("SVP") categories of either 1 or 2; the work must be low-stress, with no changes in work setting and no decision-making required; [Plaintiff] should only have minimal direct contact with the general public, occasional interaction with supervision, and should not work in close proximity to co-workers with no teamwork functioning required; he must avoid concentrated exposure to heights, moving machinery, and vibrations; he can occasionally balance, stoop, crouch, kneel, crawl or climb ramps or stairs, but he cannot climb ladders, ropes or scaffolds; and he would be unreliable and likely to be absent approximately 3 times per month (Tr. 16-17, 20).

Thus, the ALJ specifically accommodated for all of Plaintiff's medically determinable impairments in the RFC – including Plaintiff's knee condition. Accordingly, the ALJ's finding at step two that Plaintiff did not have a severe knee condition is not reversible error.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgement be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
Mark A. Randon<br>
United States Magistrate Judge

Dated: June 13, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 13, 2012, by electronic and/or ordinary mail.*

*s/Melody R. Miles*<br>
*Case Manager*